**IT IS ORDERED as set forth below:**

**Date: December 8, 2023**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>FELISA M. HARRIS-MYCHALS, and THE HARRIS LAW GROUP, P.C. | MISCELLANEOUS PROCEEDING CASE NO. 23-00502-JWC |
| MARY IDA TOWNSON, UNITED STATES TRUSTEE<br><br>        Movant.<br><br>v.<br><br>FELISA M. HARRIS-MYCHALS, and THE HARRIS LAW GROUP, P.C.,<br><br>        Respondents. | CONTESTED MATTER |

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the United States Trustee's six Motions for Review of Attorney's Conduct and Fees and Motion for Sanctions Against Attorney (Doc. Nos. 2, 10, 12, 14, 16, 18) (the "Sanctions Motions"). The undisputed facts raised

1

in the Sanctions Motions exemplify gross abuses of the bankruptcy system on multiple fronts. Those abuses were magnified here because a lawyer admitted to practice before this Court, Felisa Harris-Mychals ("Harris-Mychals"), failed in every respect to fulfil the most basic obligations to her clients – clients that she never met or spoke to before filing voluntary petitions for relief on their behalf. Her conduct violated multiple professional codes of conduct, a general order of this Court designed to protect consumer debtors, and a direct order of this Court requiring her to appear and produce documents related to her conduct. Her actions caused substantial harm to her clients and required this Court to devote substantial time and attention to bankruptcy cases that never should have been filed. For that, and for the reasons discussed in detail below, Harris-Mychals will be sanctioned as follows: (1) she will be barred from participating as a lawyer before this Court for a minimum of two years, (2) she will be ordered to disgorge any legal fees received, (3) she will be ordered to receive additional continuing legal education training, (4) she will be fined an additional $5,000.00 for her conduct, and (5) she will be referred to the State Bar of Georgia and the Committee on Discipline of the United States District Court for the Northern District of Georgia for any further appropriate discipline.

## PROCEDURAL HISTORY

The Sanctions Motions arise from the unauthorized filings of six chapter 13 bankruptcy petitions by Harris-Mychals and the Harris Law Group, P.C. (the "Harris Firm"). The Sanctions Motions were filed in six separate individual bankruptcy cases in this Court and assigned to five different judges. Because the Sanctions Motions

involve related conduct undertaken contemporaneously by the same lawyer and law firm, and each of the Sanctions Motions involve common issues of law and fact, the Sanctions Motions were transferred to this Miscellaneous Proceeding for joint administration and disposition.

The issues raised in the Sanctions Motions first came to the Court's attention in December of 2022, when Wendell Olden ("Olden") filed a Motion to Expunge Case ("Motion to Expunge") in his dismissed chapter 13 bankruptcy case. The Court held an initial hearing on the Motion to Expunge on January 24, 2023 (the "January Hearing") at which Olden, Harris-Mychals, counsel for the United States Trustee ("U.S. Trustee"), and counsel for the chapter 13 Trustee appeared. At the January Hearing, Olden informed the Court that Harris-Mychals filed a chapter 13 petition on his behalf without his knowledge or consent. Harris-Mychals confirmed on the record that she did not speak with Olden prior to filing his petition. The January Hearing also revealed that Harris-Mychals filed five other chapter 13 petitions on the same day without directly speaking with any of the purported debtors.

On February 21, 2023 (the "February Hearing"), the Court held an evidentiary hearing on Olden's Motion to Expunge and a separate Motion for Review of Conduct and Fees and Motion for Sanctions filed by the U.S. Trustee requesting sanctions against Harris-Mychals and the Harris Firm for the improper and unauthorized filing of the Olden case. Based on the testimony and evidence presented at the February Hearing, the Court found that Olden did not authorize the filing of a bankruptcy case on his behalf and that the case was filed without his knowledge or consent. As a

result, the Court found good cause to expunge the record of his bankruptcy case in its entirety. However, the Court was not prepared to rule on the sanctions motion at the February Hearing given the additional unauthorized bankruptcy cases filed by Harris-Mychals, which were not then pending before the above-named judge. The Court ordered the opening of this Miscellaneous Proceeding (the "Proceeding") to consider the sanctions motion filed in the now-expunged Olden case, and subsequently, the related sanctions motions filed in the other five cases transferred to this Proceeding. (Doc. No. 1).

Following the February Hearing, the Court held a status hearing on June 29, 2023 (the "June Status Hearing") where Stephen Breland and Mutale Isom appeared and requested to be heard relative to the unauthorized filings of chapter 13 petitions on their behalf. Both indicated that they were willing to testify at a future evidentiary hearing. Accordingly, the Court scheduled a further evidentiary hearing for August 9, 2023 (the "August Hearing") to consider the five additional sanctions motions filed by the U.S. Trustee now consolidated into this Proceeding. (Doc. No. 23). In connection with the August Hearing, the Court ordered Harris-Mychals to appear at the hearing and offer any response she had to the additional sanctions motions. *Id.* Further, the order required her to produce to the U.S. Trustee on or before August 2, 2023, pursuant to BLR 5005-7(c)(3)(B),[1] the original Verified Papers (as that term is defined by BLR 9001-1(o)) for the five additional cases. *Id.*

---

[1] Local Rule 5005-7(c)(3)(B) provides:
The person filing the Verified Paper:
    i.    must maintain in such person's files the original Verified Paper in its entirety for a period ending one year after the case or proceeding in which the Verified Paper is filed is closed;

At the August Hearing, counsel for the U.S. Trustee, counsel for the chapter 13 Trustee, and Stephen Breland ("Breland") appeared. Despite a court order directing her appearance, Harris-Mychals failed to appear. Counsel for the U.S. Trustee indicated at the August Hearing that Harris-Mychals had ignored all contact from the U.S. Trustee since the initial February Hearing and failed to produce any documents in compliance with the Court's order following the June Status Hearing. In her absence, the Court heard arguments from counsel for the U.S. Trustee and testimony from Breland. At the end of the August Hearing, the Court took the Sanctions Motions under advisement.

Based on the evidence presented at the February Hearing and the August Hearing, and the Court's review of the record in this Proceeding and each of the six bankruptcy cases filed by Harris-Mychals related to this matter, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

### I. Felisa Harris-Mychals

At the February Hearing, Harris-Mychals testified that she is a member of the Georgia Bar and a solo-practitioner through her law firm, the Harris Firm, which operates in the Atlanta Metropolitan Area. For the past seventeen or eighteen years, her legal practice included bankruptcy work, but she decreased her bankruptcy case filings in recent years.

---

ii.    must produce the original for inspection and copying upon request of the Bankruptcy Court or any party in interest; and

iii.   if ordered by the Bankruptcy Court, must transmit the original to the Bankruptcy Clerk.

On October 31, 2022, she received a phone call from Byron Ellis (also known as Byron Ellis Raines or Byron Raines) ("Ellis"), whom Harris-Mychals never met or spoke to prior to the call. Ellis was referred to her by another attorney. Ellis told Harris-Mychals that he represented seven individual investors who wished to file bankruptcy petitions to stop a pending foreclosure on several hundred commercial real estate properties scheduled for the following day. Ellis conveyed to Harris-Mychals that all communications with the filing investors would go through him because they were "working folk" that needed the petitions filed expeditiously. He represented that each investor was willing and able to fund a chapter 13 plan but that the immediate focus was on preventing foreclosure of a large multi-unit property in which the investors had an interest. Ellis further disclosed that the multi-unit property was the subject of a previous bankruptcy case in which the debtor was currently barred from refiling for 180 days.[2]

After limited communications via phone and email throughout the day, Harris-Mychals agreed to file the chapter 13 cases for the investors. She sent copies of the respective bankruptcy petitions to Ellis, and shortly thereafter, Ellis returned the completed petitions with all the necessary information, images of the investors' driver's licenses, and purported photos of their signatures.

---

[2] Yenom Acquisitions, LLC filed a petition for relief under chapter 11 of the Bankruptcy Code on September 6, 2022, the morning of a foreclosure sale of the properties involved in this Proceeding. Case No. 22-57070-WLH. The case was dismissed ten (10) days later with a 180-day bar on refiling due to the chapter 11 case being filed in bad faith.

On November 1, 2022, at the direction of Ellis, Harris-Mychals filed six skeletal[3] bankruptcy petitions:

- Case No. 22-58823-JWC on behalf of Wendell Olden;

- Case No. 22-58812-WLH on behalf of Christopher Flournoy;

- Case No. 22-58813-SMS on behalf of William Troy Casey;

- Case No. 22-58814-PMB on behalf of Steven Breland;

- Case No. 22-58815-LRC on behalf of Mutale Isom; and

- Case No. 22-58816-WLH on behalf of Glenn C. Howell.

Harris-Mychals filed these petitions without directly communicating with any of the individuals and failed to execute attorney-client agreements with any of the six investors. Further, she failed to discuss with the individuals the merits of the bankruptcy filings or the ramifications of filing for bankruptcy. Harris-Mychals undertook no due diligence to verify the information provided by Ellis or to certify that the investors satisfied the debt limit qualifications for chapter 13 relief. She did not run any kind of credit report or conduct any kind of public records search for any of the individual investors.

For her services, Harris-Mychals received $1,313.00 per case filed ($1,000.00 in attorney's fees plus $313.00 in court fees); $7,800.00 coming from an entity known as "2 Big Legacy, LLC," and $1,313.00 coming from an individual named Regina

---

[3] A skeletal petition typically consists of only the bare minimum documentation and information required to commence a bankruptcy case.

Curtis.[4] Harris-Mychals later returned one payment of $1,313.00 because only six petitions were filed due to Ellis's failure to provide documentation for the seventh filing. Harris-Mychals failed to disclose these payments via a Form 2030 as required by Federal Rule of Bankruptcy Procedure 2016(b). She also failed to provide the investors with a copy of the Statement of Rights and Responsibilities as required by this Court's General Order 42-2020.

On November 3, 2022, two days after the petitions were filed, Ellis emailed Harris-Mychals informing her of the investors' desires to dismiss their chapter 13 cases. Within an hour of Ellis's email, he sent Harris-Mychals signed voluntary dismissal forms for each of the six investors. All six cases were dismissed the following day. Following the dismissals, Harris-Mychals heard nothing from Ellis or the investors until January 24, 2023, when Olden appeared at the January Hearing on his Motion to Expunge, and where he met and spoke to Harris-Mychals for the first time.

## II. Wendell Olden

At the February Hearing, Olden testified that he is a real estate developer who completed two projects in the last seven years in Forsyth County, Georgia. He specializes in buying undeveloped land and building single family homes. In 2021, Olden invested in a tenant-occupied condo building with six other investors (the "Condo Investment") in Monroe, Georgia. Olden did not personally know any of the

---

[4] The Court notes that Harris-Mychals' testimony was inconsistent as the amounts she indicated she received for attorney's fees and filing fees do not match exactly with the amounts she testified were paid by 2 Big Legacy, LLC, and Regina Curtis.

8

other investors at the time. Olden was brought into the Condo Investment by his business partner, Dexter Hull (also known as Curtis Hull) ("Hull"). Olden did not receive funds directly from the Condo Investment tenants. Instead, a property manager collected rent from the tenants and made loan payments directly to the lender for the Condo Investment. At some point, the property manager stopped making loan payments without notifying the investors, causing the Condo Investment to fall into financial distress. The Condo Investment involves the same multi-unit property facing foreclosure in November 2022 that led to the unauthorized bankruptcy cases.

Hull introduced Olden to Ellis in the summer of 2022 as a sort of real estate broker that would guide the investors through refinancing the Condo Investment. Initially, Olden and Ellis regularly communicated regarding a potential refinance. During this process, Olden provided Ellis with his personal information, including his driver's license, social security number, and other documents necessary to refinance the Condo Investment. At some point during this process, Ellis asked Olden if he would consider filing for bankruptcy. Olden adamantly rejected the idea.

On November 1, 2022, Olden received an influx of notifications that a bankruptcy was filed in his name. He immediately called Ellis, who informed him that the case was filed by mistake. Ellis assured Olden that their attorney, Harris-Mychals, made a mistake and that Ellis would help resolve the issue. Olden did not sign the bankruptcy petition or authorize Ellis to file a petition in his name. Olden did, however, sign and file a motion to dismiss at the direction of Ellis on November

9

3, 2022. Olden believed the dismissal would remedy any issues caused by the "mistaken" filing. Unfortunately, it did not.

Since the unauthorized filing, Olden's life has turned upside down. His credit score went from the 800s to the 500s overnight. His real estate development business came to a complete halt, and most of his credit accounts were shuttered. Due to the chaos in his business life, he has struggled to make ends meet and support his three children. Between the loss of business opportunities, difficulty feeding his family, and countless hours spent attempting to remedy the fallout, this ordeal has added substantial stress to Olden's life.

### III.        Steven Breland

At the August Hearing, Breland testified that he is a retired restaurant manager and currently works as a rideshare driver. Breland recalled that he was introduced by a family member to Sam Thompson ("Thompson"). Around the end of 2021, Thompson called Breland and inquired about potentially "buying" his credit score for $15,000.00, and utilizing Breland's high credit score to assist Thompson in securing financing to purchase commercial real estate. Thompson told Breland that he would simply need to sign some documents to receive the $15,000.00, so Breland agreed.[5]

---

[5] The scheme described by Breland in his testimony struck the Court as involving clearly fraudulent conduct. Use of the Bankruptcy Court as a means of furthering such schemes is deeply troubling to the Court but ultimately beyond the scope of the issues to be resolved in the Sanctions Motions currently before the Court. In making this statement, the Court does not intend to cast aspersions on Breland, who appears to have been unwittingly duped, albeit for a $15,000.00 return, by the conduct of others.

10

In late 2021, Breland attended a document signing at the law firm of Leonard Medley, LLC, at which Thompson and Hull were present. Breland never met Hull prior to the signing nor was he aware of Hull's involvement in the process. Two weeks after the signing, Breland met Thompson in-person and received a $15,000.00 check. Following receipt of the check, Breland occasionally received calls from Thompson urging him to conduct another signing, but Breland never did.

About six or seven months after the initial signing, Breland found out the property he signed for was in distress. He began receiving phone calls and letters from a lender regarding past due payments. Breland ultimately discovered that he held an ownership interest in the Condo Investment, and it was his interest in that investment that led to the calls and letters from the lender relating to the distressed property. Breland called Thompson who claimed that the property manager was stealing funds, which caused a lapse in payments to the lender. Thompson assured Breland that he was working on a solution. In October of 2022, Thompson told Breland that in an effort to scare the lender he wanted to send the lender an "Intent to File Bankruptcy" (the "Intent Form") on Breland's behalf. The purpose was not to file an actual bankruptcy case but to threaten to file a case for leverage with the lender. Breland signed a document he believed to be an Intent Form, which he described as a one- to two-page document. Breland signed the Intent Form and sent it back to Thompson. When shown the voluntary petition filed on his behalf at the August Hearing, Breland said the Intent Form differed in appearance and page quantity from the voluntary petition.

11

Shortly after signing the Intent Form, Breland received notice that a bankruptcy had been filed in his name. He immediately called and sent text messages to Thompson, who initially ignored Breland's communication attempts. Ultimately, Thompson emailed Breland a voluntary dismissal form and instructed Breland to sign it. Thompson did not explain to Breland why a case was filed in his name, but Thompson told Breland that signing and filing the dismissal would "clear everything up." Again, it did not.

Since the unauthorized filing, Breland's life has been in turmoil. All of his credit card accounts were abruptly closed, and his credit score dropped over 150 points. To support himself and his disabled wife, Breland picked up working as a rideshare driver. Breland confirmed that he never met or spoke to Harris-Mychals, and he never authorized her to file a bankruptcy petition on his behalf.

## CONCLUSIONS OF LAW

From the above facts, the U.S. Trustee asks the Court to impose significant sanctions against Harris-Mychals and the Harris Firm for their conduct. The Court agrees that significant sanctions are warranted.

### I.    Harris-Mychals violated the Georgia Rules of Professional Conduct

The uncontradicted testimony detailed above, and Harris-Mychals' own admissions at the February Hearing, make clear that she committed gross violations of her professional responsibilities. The Georgia Rules of Professional Conduct apply in all proceedings in the Bankruptcy Court through BLR 9010-3.[6] The Court finds

---

[6] BLR 9010-3 provides that LR 83.1C (Local Rule of Practice for the United States District Court for the Northern District of Georgia) applies to all proceedings in the Bankruptcy Court. LR 83.1C, in

Harris-Mychals violated, at a minimum, two Georgia Rules of Professional Conduct: Rule 1.1 Competence[7] and Rule 1.4 Communication.[8]

Harris-Mychals violated Rules 1.1 and 1.4 by taking on six clients and filing skeletal petitions purportedly on their behalf without ever speaking to them or directly communicating with them in any way. Nothing about her conduct demonstrates what Rule 1.1 requires: competent legal representation on behalf of her clients. Her conduct was anything but competent and certainly falls short of exemplifying the requisite skill, knowledge, thoroughness, and preparation required to represent individuals in chapter 13 bankruptcy cases. Rule 1.4 requires a lawyer to consult with a client about how the client's objectives are to be accomplished and to explain a matter to the extent reasonably necessary to permit the client to make

---

turn, provides: "All lawyers practicing before this Court are governed by and must comply with the specific rules of practice adopted by this Court and, unless otherwise provided, with the Georgia Rules of Professional Conduct and the decisions of this Court interpreting those rules."

[7] Rule 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation as used in this rule means that a lawyer shall not handle a matter which the lawyer knows or should know to be beyond the lawyer's level of competence without associating another lawyer who the original lawyer reasonably believes to be competent to handle the matter in question. Competence requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[8] Rule 1.4 provides:

(a) A lawyer shall:

1. promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0 (h), is required by these rules;
2. reasonably consult with the client about the means by which the client's objectives are to be accomplished;
3. keep the client reasonably informed about the status of the matter;
4. promptly comply with reasonable requests for information; and
5. consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Georgia Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

an informed decision regarding the representation. Harris-Mychals acted without informing, consulting with, or explaining anything to her clients, let alone the substantial legal ramifications of filing petitions for relief under the Bankruptcy Code.

Moreover, Harris-Mychals' actions injured her clients. Although the Court only heard testimony from two of the six impacted investors, they both testified to significant and serious financial consequences flowing from the unauthorized filings. She deliberately chose to represent six individuals she never met or spoke to, and she did so based solely on the representations of Ellis, who she never met and with whom she had no prior history. And she did so without conducting any due diligence to determine Ellis's credibility. Her conduct not only caused direct financial hardship and distress for both Olden and Breland but also led to a substantial waste of judicial resources. The Court has devoted significant time and energy conducting multiple evidentiary hearings, addressing multiple motions to expunge, and now addressing the Sanctions Motions, all relating to bankruptcy cases that never should have been filed.

## II.    Harris-Mychals failed to comply with General Order 42-2020

In additional to violating the Georgia Rules of Professional Conduct, Harris-Mychals failed to comply with this Court's General Order 42-2020, which applies to all attorneys admitted to practice in this Court. Section 8.0 of General Order 42-2020 expressly states:

> Before filing a Chapter 13 petition on behalf of a Debtor, the attorney for the Debtor must provide the Debtor a copy of the

14

statement of Rights and Responsibilities attached as Exhibit A and shall certify same in the 2016(b) Statement. Failure of an attorney to perform all of the attorney's duties set forth in the statement of Rights and Responsibilities may result in the reduction or disgorgement of fees, expenses, and costs in such amount as the Court concludes is appropriate.

The Rights and Responsibilities Statement between chapter 13 debtors and their attorneys provides that before a case is filed, an attorney must complete a multi-faceted list of tasks *personally* with the Debtor. The list includes:

(1) Personally counsel Debtor regarding the advisability of filing either a Chapter 13 or Chapter 7 case, discuss with Debtor the procedures in both Chapters, as well as non-bankruptcy options, and answer Debtor's questions.

(2) Personally explain to Debtor the requirement of obtaining a certificate from an approved nonprofit budget and credit counseling agency.

(3) Personally explain to Debtor that the attorney is being engaged to represent Debtor on all matters arising in the case, and explain how and when the attorney's fees and the trustee's fees are determined and paid.

(4) Personally review with Debtor and obtain Debtor's signature on the completed petition, plan, as well as the Statement of Financial Affairs, Income and Expenses, and other statements as well as the various schedules (the "Schedules"), and all amendments thereto, whether filed with the petition or later. The Schedules may be prepared initially with the help of clerical or paralegal staff of the attorney's office, but personal attention of the attorney is required for the review and signing by the Debtor.

(5) Timely prepare and file Debtor's petition, plan, Schedules, statement of monthly net income, and any other required pleading.

Exhibit A, General Order 42-2020. The record in each of the six cases and the testimony adduced at the multiple hearings established that Harris-Mychals failed

to comply with any of the requirements of General Order 42-2020 in connection with each of the six chapter 13 petitions.

First, Harris-Mychals never entered into attorney-client agreements with any of the six investors and never communicated directly with any of them prior to filing petitions on their behalf. She likewise failed to personally counsel each of the investors on the advisability of filing for bankruptcy, the legal ramifications of doing so, and other potential options outside of filing.

Second, Harris-Mychals failed to personally explain to each investor the requirement of obtaining a certificate from an approved nonprofit budget and credit counseling agency, a prerequisite to filing.

Third, Harris-Mychals never personally explained to each investor the rules of engaging an attorney as well as how and when attorney's fees and the trustee's fees are determined and paid.

Finally, Harris-Mychals failed to personally review with the investors or devote any personal attention to the review and signing of the chapter 13 petitions with any of the investors. She obtained all the information from a third-party, Ellis, who she never met before, and she undertook no due diligence to confirm the information he provided. Harris-Mychals also failed to obtain proper signatures from the investors and failed to undertake any due diligence into their financial circumstances. Simply put, Harris-Mychals failed to perform any of the obligations mandated by General Order 42-2020.

16

### III.   Harris-Mychals disregarded Court Order to Appear and Produce Documents

Harris-Mychals also disregarded and failed to comply with a specific order of this Court requiring her appearance and production of documents. Specifically, the Court entered an order directing as follows:

> **Felisa M. Harris-Mychals shall appear** at the evidentiary hearing and offer any response she has to the Motions for Review of Conduct and Fees and Motions for Sanctions filed by the United States Trustee in the above-styled miscellaneous proceeding. It is further
>
> ORDERED that, **on or before August 2, 2023**, pursuant to Northern District of Georgia Bankruptcy Local Rule 5005-7(c)(3)(B), **Felisa M. Harris-Mychals shall provide** to the United States Trustee, for inspection and copying, the original Verified Papers [as that term is defined by Northern District of Georgia Bankruptcy Local Rule 9001-1(o)] for the following cases: (1) Case No. 22-58812, In Re Christopher Flournoy; (2) Case No. 22-58813, In Re William Troy Casey; (3) Case No. 22-58814, In Re Steven Breland; (4) Case No. 22-58815, In Re Mutale T. Isom; (5) Case No. 22-58816, Glenn C. Howell.

(Doc. No. 23). Despite this direct and unambiguous order, Harris-Mychals failed to appear at the August Hearing and failed to produce documents to the U.S. Trustee. *Id.*

### IV.   Sanctions Must Be Imposed

The Court simply cannot tolerate such gross violations of professional duties by attorneys appearing before it. To do otherwise would risk the possibility of the same or similar conduct wreaking unmerited harm on other debtors or parties appearing before the Court. "Federal courts, including bankruptcy courts, have the inherent power to impose sanctions on parties and lawyers." *In re Evergreen Security, Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009) (quoting *In re Walker*, 532 F.3d 1304, 1309

(11th Cir. 2008)); *see also In re Mroz*, 65 F.3d 1567, 1576 (11th Cir.1995). "This power is derived from the court's need to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *In re Evergreen Security*, 570 F.3d at 1263 (quoting *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006)). Among other things, "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132 (1991). "Bankruptcy Courts also have authority under § 105(a) 'to regulate those who appear before it, and what they say and do during that representation.'" *In re New River Dry Dock, Inc.*, No. 06–13274–BKC–JKO, 2011 WL 4382023, at *2 (Bankr. S.D. Fla. Sept. 20, 2011), *aff'd sub nom. In re Gleason*, No. 11–62406–CIV, 2012 WL 463924 (S.D. Fla. Feb. 13, 2012), *aff'd,* 492 F. App'x 86 (11th Cir. 2012). "The Court has inherent and statutory authority to control admission to its bar and to discipline attorneys practicing before the Court" independent of the State Bar of Georgia's authority and disciplinary proceedings to sanction its members for misconduct. *Id.* at *3.

As to sanctions, the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Section 105(a) grants the Court authority to impose sanctions against attorneys to prevent an abuse of the bankruptcy process. *In re Matus*, 303 B.R. 660, 683 (Bankr. N.D. Ga. 2004). Section 105 authorizes the Court to issue any type of order, whether injunctive, compensative, or punitive, as long as it is necessary or appropriate to carry out provisions of the Bankruptcy Code. *In re Workman*, 392 B.R.

189, 196 (Bankr. D.S.C. 2007) (*citing Jove Engineering, Inc. v. IRS*, 92 F.3d 1539, 1554 (11th Cir. 1996)). "The appropriate sanction is one 'intended to ensure future compliance with the law and the Bankruptcy Court's standards guiding bankruptcy proceedings.'" *In re T.H.*, 529 B.R. 112, 146 (Bankr. E.D.Va. 2015) (citing *In re Parker*, No. 3:14-cv-241, 2014 WL 4809844, at *6 (E.D.Va. Sept. 26, 2014)). In determining the appropriate sanction, the Court should consider the extent of the sanction as it compares to the attorney's conduct in the case. *In re Whitley*, 737 F.3d 980, 987–88 (5th Cir. 2013). Here, the record demonstrates that monetary sanctions against Harris-Mychals for her gross violations of her professional duties are necessary and appropriate.

While the Court has the inherent power to control and discipline the attorneys and parties who appear before it, such power must be exercised with caution and must comply with the appropriate mandates of due process. *Chambers,* 501 U.S. at 50, 111 S.Ct. at 2136. "Due process requires that the attorney (or party) be given fair notice that [her] conduct may warrant sanctions and the reasons why." *In re Mroz*, 65 F.3d at 1575 (citing *Donaldson v. Clark*, 819 F.2d 1551, 1559–60 (11th Cir. 1987)). Here, the record demonstrates that Harris-Mychals and the Harris Firm were provided with appropriate due process.

First, Harris-Mychals voluntarily appeared and testified at the February Hearing, where she admitted to her improper conduct. Second, Harris-Mychals and the Harris Firm were on notice of the relief requested in the Sanctions Motions, which included requests for disgorgement of fees and additional monetary sanctions, as they

were served with each and provided notice of hearing with respect to each. (Doc. Nos. 2, 10, 12, 14, 16, 18). Finally, Harris-Mychals was ordered by the Court to attend the August Hearing and provide any response to the Sanctions Motions and produce documents to the U.S. Trustee prior to the August Hearing. (Doc. No. 23). The Order to attend and produce documents was properly served on both Harris-Mychals and the Harris Firm at two separate addresses. *Id.* Harris-Mychals willfully and deliberately chose to ignore all communication attempts from the U.S. Trustee and failed to appear at the August Hearing despite a direct and unambiguous order requiring her appearance. The record in this case demonstrates that Harris-Mychals and the Harris Firm were on fair notice of the allegations made against them and were provided multiple opportunities to explain their conduct and offer any evidence in mitigation. Therefore, the requirements of due process have been met here.

Pursuant to the Court's inherent powers and its authority under Section 105(a), the Court finds it appropriate to sanction Harris-Mychals and the Harris Firm to ensure that similar conduct is not repeated. The Court further finds it appropriate to refer this matter to the State Bar of Georgia and the Committee on Discipline of the United States District Court for the Northern District of Georgia for any further appropriate discipline. Accordingly,

**IT IS ORDERED** that Harris-Mychals and the Harris Firm shall disgorge all fees in the total amount of $6,000.00 paid in connection with the six bankruptcy cases. Harris-Mychals and the Harris Firm shall pay such disgorged fees to the registry of the Clerk of Court no later than January 31, 2024.

**IT IS FURTHER ORDERED** that as a result of her conduct in this case, Harris-Mychals shall pay an additional monetary sanction of $5,000.00 to the registry of the Clerk of Court no later than January 31, 2024.

**IT IS FURTHER ORDERED** that, in addition to any minimum continuing legal education requirement of the State Bar of Georgia, Harris-Mychals shall attend and obtain credit for fifteen (15) hours of continuing legal education focused on consumer bankruptcy topics, with at least three (3) of those hours focused on professionalism and/or ethics in bankruptcy.

**IT IS FURTHER ORDERED** that Harris-Mychals shall immediately be barred from participating in any current case or entering any new appearances on behalf of any client in any capacity in the United States Bankruptcy Court for the Northern District of Georgia for a period of at least two (2) years from the date of entry of this Order. To the extent Harris-Mychals has any ongoing representations in this Court, she shall take immediate steps to have such representations transferred to other attorneys to minimize any disruption to her existing clients. If, at the end of the two-year period, Harris-Mychals has complied fully with the terms of this Order and has filed a certification with the Clerk of Court certifying under oath her compliance with the terms of this Order, the bar on her ability to appear in cases in this Court may be lifted.

**IT IS FURTHER ORDERED** that any funds received by the Clerk of Court pursuant to this order shall be held for a period of one year. To the extent any party asserts an interest in the fees or sanctions award, or an entitlement to such based on

any damages suffered as a result of the conduct in this case, parties have one (1) year from the date of entry of this Order to file a claim of entitlement to such funds and appear before the court to establish their entitlement to such funds. After the one-year deadline, if no claim to the funds has been made or the balance of the funds has not been fully administered, the Clerk of Court is directed to deliver the balance of any funds held to the Atlanta Legal Aid Society in furtherance of its charitable mission.

The Clerk is directed to serve a copy of this Order on Felisa Harris-Mychals, the Harris Firm, the United States Trustee, and all parties on the distribution list.

**END OF DOCUMENT**

# DISTRIBUTION LIST

Felisa M. Harris-Mychals
The Harris Law Group, P.C.
P.O. Box 3532
Peachtree City, Georgia 30269

The Harris Law Group, P.C.
Attn: Felisa Harris, Registered Agent
110 Habersham Drive
Fayetteville, Georgia 30214

Wendell Ladon Olden
6995 Northgreen Drive
Atlanta, Georgia 30328

Nancy J. Whaley
Standing Chapter 13 Trustee
Suite 120, Truist Plaza Garden Offices
303 Peachtree Center Avenue
Atlanta, Georgia 30303

Jonathan S. Adams
United States Department of Justice
Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Steven Breland
6832 Bridgewood Drive
Austell, GA 30168

Mutale T Isom
116 Highland Park Trl
Atlanta, Georgia 30350

Melissa J. Davey
233 Peachtree Street, NE
Suite 2250
Atlanta, Georgia 30303

Glenn C. Howell
3871 Windhurst Drive, S.W.
Lilburn, Georgia 30047

Christopher Flournoy
4483 Lionshead Circle
Decatur, Georgia 30032

Alexander Gray Hait
Hait & Kuhn
185 Stockwood Drive
Suite 100
Woodstock, Georgia 30188

William Troy Casey
5713 Singlebriar Court
Norcross, Georgia 30093

K. Edward Safir
285 Peachtree Center Ave, N.E.
Suite 1600
Atlanta, Georgia 30303